UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CHARLES F.O. BURGESS,
    Plaintiff,

v().                                                               CIVIL ACTION NO. 23-11805-ADB

MARTIN O'MALLEY,[1]
Commissioner of Social Security,
    Defendant.

REPORT AND RECOMMENDATION[2]
ON PLAINTIFF'S MOTION FOR AN ORDER
REVERSING THE COMMISSIONER'S DECISION (#10) AND
DEFENDANT'S MOTION TO AFFIRM THE COMMISSIONER'S DECISION (#17)

KELLEY, U.S.M.J.

I. INTRODUCTION.

On April 2, 2024, plaintiff Charles F. O. Burgess ("Mr. Burgess") filed a motion seeking to reverse the Commissioner's unfavorable decision. (#10.) Defendant Martin J. O'Malley, Commissioner of Social Security, filed a motion to affirm the Commissioner's decision on May

---

[1] This case was originally filed against Kilolo Kijakazi, then the Acting Commissioner of the Social Security Administration. Martin O'Malley was sworn into office as Commissioner of the Social Security Administration on December 20, 2023. Pursuant to Fed. R. Civ. P. 25(d), Martin O'Malley, in his official capacity, is being automatically substituted as the defendant.

[2] The parties were advised of the opportunity to consent to proceed before a United States Magistrate Judge (#12), but they did not respond.

1

30, 2024. (#17.) This matter has been referred to the undersigned for a report and recommendation on those motions.

It is undisputed that Mr. Burgess was approved to receive disability insurance benefits on June 24, 2018 (A.R. at 20[3]), so there is no need to delve into documentation that would traditionally be used to establish a disability. Mr. Burgess is in the unusual position of having his ability to receive payment of those benefits hindered by a citizenship issue. *Id.* This citizenship issue has spurred a secondary question of jurisdiction raised by the ALJ's determination that "it is . . . not the place of the Social Security Administration to make determinations as to the citizenships of claimants, as that would fall under the jurisdiction of USCIS." *Id.*

## II. BACKGROUND.

Mr. Burgess was born in Weiden, Germany to a German-born mother, Eva Marie Burgess, on October 25, 1952. *Id.* at 131. He was adopted by his father, Donald Burgess, following his parents' November 17, 1953, marriage in Germany. *Id.*; *Id.* at 149. Donald was a citizen of the United States, born in Quincy, Massachusetts in April of 1931. *Id.* at 131. In early 1954, the family relocated to Massachusetts, where Donald and Eva Marie had two more children before Eva Marie was naturalized in 1959. *Id.* at 131-32.

Mr. Burgess' application for disability benefits was approved with an entitlement date of February 2018. *Id*. at 77. However, he was informed that "[t]o receive benefits, you must be a U.S. citizen or national, or lawfully present in the U.S." *Id.* On April 15, 2019, plaintiff requested reconsideration on the citizenship issue. *Id.* at 45. On May 22, 2021, upon review, the Social Security Administration ("SSA") confirmed its initial decision. *Id.* Mr. Burgess was advised that

---

[3] References to the administrative record (##8-1, 8-2, and 8-3) will be noted as "A.R." followed by the corresponding page number given by the court's docketing system which appears on the right-hand corner of each page.

he must submit evidence that he was a U.S. citizen and that the Department of Homeland Security had jurisdiction in making citizenship decisions. *Id.* at 46. Specifically, the SSA letter stated that:

> For payment as a United States citizen, you must submit proof of your citizenship. The evidence to show your citizenship can be any of the following:
> 1. A birth certificate showing birth in the United States
> 2. A current United States passport
> 3. Form I-197 (United States Citizen Identification Card issued by DHS (Department of Homeland Security)
> 4. Form FS-545 (Report of Birth Abroad of a Citizen of the United States) usually issued at the time of the child's birth by the Department of State
> 5. Form FS-545 (Certification of Birth) issued by a foreign service post or a copy issued by the Department of State
> 6. Form N-550 and N-570 (Certificate of Naturalization) issued by DHS through Federal or State courts
> 7. Form N-560 or N-561 (Certificate of Citizenship) issued by DHS upon request to individuals who derive United States citizenship through a parent
> 8. Form DS-1350 (Certificate of Report of Birth) issued by the State Department
> 9. Northern Mariana Identification Card issued by INS in 1987 to collectively naturalized citizens born in the Northern Mariana Islands before November 3, 1986
> 10. American Indian Card issued by INS in 1983 to Kickapoo Indians living near the United States-Mexican border.

*Id.* at 47-8.

Finally, the letter advised that "[i]f you do not have any of the above documents, you need to contact the Department of Homeland Security and have their office make a determination of your United States citizenship." *Id.* at 48.

In an attempt to establish his citizenship, Mr. Burgess filed an Application for Replacement Naturalization or Citizenship Certificate, Form N-565, number seven (Certificate of Citizenship) on the list of proof from SSA. *Id.* at 155. In the decision from the U. S. Citizenship and Immigration Services ("USCIS") dated March 5, 2021, his application was denied because he was never issued an Initial Certificate of Citizenship. *Id*. While the letter acknowledged that plaintiff's mother was naturalized in 1959 and that he "derived [his] US Citizenship status from [his] mother when she was naturalized," it further stated that he had never applied for an Initial Certificate of Citizenship.

3

*Id*. Mr. Burgess was advised that "[i]f [he] derived U.S. citizenship through [his] parent(s), then [he] may wish to review the instructions for Form N-600, Application for Certificate of Citizenship, to see if [he] qualif[ies] to receive an initial Certificate of Citizenship." *Id.* at 155-56.

On March 17, 2021, Mr. Burgess filed a request for a hearing for a hearing before an ALJ. That hearing was held telephonically due to the Covid-19 pandemic on July 18, 2022. *Id*. at 27-38. On July 27, 2022, the ALJ issued a decision in which she concluded that Mr. Burgess had not filed any of the required documents cited in the SSA letter as proof of citizenship and consequently, that "the appropriate proof has not been submitted in this case." *Id.* at 21. The ALJ also noted that the SSA could not make citizenship determinations for claimants as such decisions "fall under the jurisdiction of USCIS." *Id.* at 21-2. Plaintiff's request for review was denied by the Appeals Council on June 23, 2023 (*id*. at 3), and then this case was filed.

### III. STANDARD OF REVIEW.

Title 42 U.S.C. § 405(g) provides, in relevant part:

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow . . . . The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .

The court's role in reviewing a decision of the Commissioner under this statute is circumscribed:

> We must uphold a denial of social security disability benefits unless 'the Secretary has committed a legal or factual error in evaluating a particular claim.' *Sullivan v. Hudson*, 490 U.S. 877, 885, 109 S. Ct. 2248, 2254, 104 L. Ed. 2d 941 (1989). The

> Secretary's findings of fact are conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g).

*Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996); *see Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) ("And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high . . . . [i]t means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." (internal citation and quotation marks omitted)); *Libby v. Astrue*, 473 Fed. Appx. 8, 8 (1st Cir. 2012).

The Supreme Court has defined "substantial evidence" to mean "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see Biestek*, 587 U.S. at 103; *Purdy v. Berryhill*, 887 F.3d 7, 13 (1st Cir. 2018). As the First Circuit explained:

> In reviewing the record for substantial evidence, we are to keep in mind that 'issues of credibility and the drawing of permissible inference from evidentiary facts are the prime responsibility of the Secretary.' The Secretary may (and, under his regulations, must) take medical evidence. But the resolution of conflicts in the evidence and the determination of the ultimate question of disability is for him, not for the doctors or for the courts. We must uphold the Secretary's findings in this case if a reasonable mind, reviewing the record as a whole, could accept it as adequate to support his conclusion.

*Lizotte v. Sec'y of Health & Human Servs.*, 654 F.2d 127, 128 (1st Cir. 1981) (quoting *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981)); *Purdy*, 887 F.3d at 13; *Charkowski v. Berryhill*, No. 15-cv-13356-GAO, 2017 WL 1080910, at *1 (D. Mass. Mar. 22, 2017). In other words, if supported by substantial evidence, the Commissioner's decision must be upheld even if the evidence could also arguably admit to a different interpretation and result. *See Ward v. Comm'r of Soc. Sec. Admin.*, 211 F.3d 652, 655 (1st Cir. 2000); *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam); *Torres-Martinez v. Colvin*, No. 3:16-cv-30016-KAR,

2017 WL 1075072, at *5 (D. Mass. Mar. 21, 2017). Finally, "[t]he ALJ's findings of fact are conclusive when supported by substantial evidence, 42 U.S.C. § 405(g), but are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Sacilowski v. Saul*, 959 F.3d 431, 437 (1st Cir. 2020) (quoting *Nguyen*, 172 F.3d at 35).

## IV. DISCUSSION.

The Social Security Act states that "[n]otwithstanding any other provision of law, no monthly benefit under this subchapter shall be payable to any alien in the United States for any month during which such alien is not lawfully present in the United States as determined by the Attorney General." 42 U.S.C. § 402(y). By definition, "[f]or the purposes of 8 U.S.C. 1611(b)(2) only, an 'alien who is lawfully present in the United States' means:"

> (1) A qualified alien as defined in 8 U.S.C. 1641(b);[4]
> (2) An alien who has been inspected and admitted to the United States and who has not violated the terms of the status under which he or she was admitted or to which he or she has changed after admission;
> (3) An alien who has been paroled into the United States pursuant to section 212(d)(5) of the Act for less than 1 year, except:
> (i) Aliens paroled for deferred inspection or pending removal proceedings under section 240 of the Act; and
> (ii) Aliens paroled into the United States for prosecution pursuant to 8 CFR 212.5(b)(3);
> (4) An alien who belongs to one of the following classes of aliens permitted to remain in the United States because DHS has decided for humanitarian or other public policy reasons not to initiate removal proceedings or enforce departure:
> (i) Aliens currently in temporary resident status pursuant to section 210 or 245A of the Act;
> (ii) Aliens currently under Temporary Protected Status (TPS) pursuant to section 244 of the Act;

---

[4] "Notwithstanding any other provision of law and except as provided in subsection (b), an alien who is not a qualified alien (as defined in section 1641 of this title) is not eligible for any Federal public benefit," which includes disability benefits. 8 U.S.C. § 1611(a) and (c)(1)(B). This exclusion does "not apply to any benefit payable under title II of the Social Security Act to an alien who is lawfully present in the United States as determined by the Attorney General." 8 U.S.C. § 1611(b)(2).

> (iii) Cuban–Haitian entrants, as defined in section 202(b) of Pub.L. 99–603, as amended;
> (iv) Family Unity beneficiaries pursuant to section 301 of Pub.L. 101–649, as amended;
> (v) Aliens currently under Deferred Enforced Departure (DED) pursuant to a decision made by the President;
> (vi) Aliens currently in deferred action status;
> (vii) Aliens who are the spouse or child of a United States citizen whose visa petition has been approved and who have a pending application for adjustment of status;
> (5) Applicants for asylum under section 208(a) of the Act and applicants for withholding of removal under section 241(b)(3) of the Act or under the Convention Against Torture who have been granted employment authorization, and such applicants under the age of 14 who have had an application pending for at least 180 days.

8 C.F.R. § 1.3.

Determinations of citizenship status do not fall within the jurisdiction of the ALJ or SSA. *See*, *e.g.*, *Taylor v. Barnhart*, 399 F.3d 891, 898 (8th Cir. 2005) ("We agree with the district court, moreover, that a decision on Taylor's immigration status is not within the purview of the ALJ. As discussed, the authority to determine whether Taylor is lawfully present in the United States for purposes of receiving Social Security benefits is assigned by statute to another agency. 42 U.S.C. § 402(y)."). This, in turn, impacts Mr. Burgess' receipt of disability benefits, given that his eligibility hinges upon his citizenship status as determined by United States Citizenship and Immigration Services ("USCIS") in accordance with 42 U.S.C. § 402(y).

A. <u>The Homeland Security Act of 2002 and its Predecessor</u>.

The Immigration and Naturalization Service ("INS"), which focused on immigration laws and regulations within the United States, came into existence on March 3, 1933, as a bureau within the Department of Labor ("DOL"). (Exec. Order No. 6166 (1933)). Shortly thereafter, the INS was transferred from the DOL to the Department of Justice ("DOJ"), where it then fell under the

direction and supervision of the Attorney General ("AG"). *Reorganization Plan No. V of 1940*, 5 F.R. 2223, 54 Stat. 1238 (1940). The function of the INS with respect to immigration matters remained the same. *Id.*

With the intent of "reorganiz[ing] functions or organizational units within the Bureau of Border Security or the Bureau of Citizenship and Immigration Services," Congress passed the Homeland Security Act of 2002, abolishing the INS and transferring its duties to the newly formed Department of Homeland Security ("DHS"). *Homeland Security Act of 2002*, Pub. L. No. 107-296, 116 Stat 2135, 2205 (2002). In doing so, Congress formed DHS as an umbrella organization with three branches: (1) USCIS; (2) Immigration and Customs Enforcement ("ICE"); and (3) Customs and Border Patrol ("CBP"). *Homeland Security Act of 2002*, Pub. L. No. 107-296, 116 Stat 2135 (2002).

The Director, as head of the USCIS, is tasked with "establish[ing] the policies for performing such functions as are transferred to the Director" with the abolition of the INS and transfer of duties to USCIS. *Id.* at 2195. Similarly, the HSA states that the Director,

> (B) shall oversee the administration of such policies; (C) shall advise the Deputy Secretary with respect to any policy or operation of the Bureau of Citizenship and Immigration Services that may affect the Bureau of Border Security of the Department, including potentially conflicting policies or operations; [and] (D) shall establish national immigration services policies and priorities.

*Id.*

B. <u>The Immigration and Nationality Act of 1952 and the Authority of USCIS</u>.

The INS and its successors, DHS and USCIS, are subject to the Immigration and Nationality Act of 1952 ("INA"). The INA, like the HSA, identifies the AG as the person who shall "establish such regulations, prescribe such forms of bond, reports, entries, and other papers, issue such instructions, review such administrative determinations in immigration proceedings, delegate such authority, and perform such other acts as the Attorney General determines to be

8

necessary." 8 U.S.C. 12 § 1103 (g)(2). While the INA identifies the AG and their agents as the authoritative personnel for immigration matters, the HSA clarifies that matters previously handled by INS are currently transferred to DHS and USCIS as the two agencies act under the supervision of the AG. *Homeland Security Act of 2002*, Pub. L. No. 107-296, 116 Stat 2135, 2195 (2002). Additionally, the INA serves as the statutory resource for issues of immigration, nationality and naturalization, refugee assistance, and other related matters.

Mr. Burgess has been notified that he will need to submit an Application for a Certificate of Citizenship (N-600), in accordance with USCIS policy. "A person born outside the United States who automatically acquires U.S. citizenship is not required to have evidence of such status. However, if the person seeks documentation of U.S. citizenship status, the person may file an Application for Certificate of Citizenship (Form N-600) with USCIS." (USCIS Policy Manual Vol. 12 Part H Ch. 4 (E)).

While plaintiff submitted other documentation in an attempt to prove his citizenship, it is undisputed that he has not filed any of the documents listed in the May 2021 SSA letter on reconsideration. In March 2021, USCIS denied his application for a replacement Certificate of Citizenship because he had never applied for an initial Certificate of Citizenship. USCIS specifically directed him to "Form N-600, Application for Certificate of Citizenship, to see if you qualify to receive an initial Certificate of Citizenship." (A.R. at 156.)  At the hearing, plaintiff's attorney acknowledged that, despite the USCIS direction, he had not filed Form N-600. *Id*. at 34-7.[5]

---

[5] Mr. Burgess' attorney also indicated that he would be filing the Form N-600. (A.R. at 37; #11, Memorandum in Support at 3.)  In her decision, the ALJ observed that "[i]f and when claimant received a determination from USCIS that shows that he is a citizen, he can file to reopen his disability application." *Id*. at 22; *see* 20 C.F.R §§ 404.988-989.

Based on the record, there is substantial evidence to support the ALJ's decision. *See, e.g., Padilla v. Comm'r of Soc. Sec.*, No. CV 14-1828, 2015 WL 5770463, at *6 (D.N.J. Sept. 30, 2015). Further, the ALJ was legally correct in holding it was not within her jurisdiction independently to decide the citizenship issue.

## V. RECOMMENDATION.

For the reasons stated, I RECOMMEND that Plaintiff's Motion for an Order Reversing the Commissioner's Decision (#10) be DENIED and Defendant's Motion to Affirm the Commissioner's Decision (#17) be GRANTED.

## VI. REVIEW BY THE DISTRICT JUDGE.

The parties are hereby advised that any party who objects to this recommendation must file a specific written objection thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the recommendation, or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b), Fed. R. Civ. P., shall preclude further appellate review. *See Keating v. Sec'y of Health and Human Servs.*, 848 F.2d 271 (1st Cir. 1988); *U.S. v. Valencia–Copete*, 792 F.2d 4 (1st Cir. 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *U.S. v. Vega*, 678 F.2d 376, 378–79 (1st Cir. 1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603 (1st Cir.1980); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

August 19, 2024                                    /s/ Page Kelley
                                                   Page Kelley
                                                   United States Magistrate Judge